The Honorable Court, all rise. The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. May be seated. Court is in session. I just want to welcome Judge Burroughs from the District of Massachusetts, who's joining us on the bench today. Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is number 19-2253, 19-2262, and 20-1274, United States v. Andino-Morales, Fulch-Colon, and Miranda-Montanez. At this time, would Attorney Victor Ramos please introduce himself on the record to begin? Good morning. My name is Victor Ramos-Rodriguez. Could you speak just a little bit louder? I'm having trouble hearing you. Should I take my mic? You may if you want. Yes, once again, my name is Victor Ramos-Rodriguez. I'm representing Anibal Miranda-Montanez in this case. I would like to request that two minutes be saved for report only, Your Honor. You may. Yes, Your Honor. In this case, the government did not present any evidence to prove the elements of the count's charge in the indictment against my client. To satisfy this burden of proof, the government must present substantial evidence as to each of the elements of the offense. Although in this case, the government presented evidence at trial that my client, Mr. Anibal Miranda-Montanez, was a chapter leader in Ponce for the organization known as the Nietas, the evidence also clearly established that he was not a participant in the conduct of the affairs of the enterprise, which is an element of the recall charge. The evidence presented by the government by means of telephone recordings demonstrated that members of the Nietas were dissatisfied with Mr. Miranda-Montanez because he was not complying with the norms or the rules of the alleged organization. There was clearly a movement among members of the Nietas organization to remove my client from his position as a Nietas chapter leader. And this was so because of the fact that there were some norms and some rules that he was not complying with in his position when he was in Ponce. We must not forget the fact that the Nietas organization was formed based on legal terms. The basic principle of the Nietas was to look for the well-being of the inmates. And they have several rules that all members have to comply with when they wanted to join the Nietas organization as members. One of the rules clearly established that not contract killing was allowed. So when we talk in this case about the fact that Mr. Miranda-Montanez was supposed to follow the rules and cooperate with the activities of the Nietas organization, killing was not one of the rules that he was supposed to follow. Isn't there evidence that your client gave the final authorization to kill Alexis DeLuca? No, Your Honor. What they said was that he was informed of the alleged order given by one of the maximum leaders of the Nietas organization and that he let him go. He didn't have to give any final authorization because he didn't have the authority to stop or to impede that order given from the maximum leaders. Did he relay the order to anyone else? He didn't relay the order to anyone else. As a matter of fact, Your Honor, when the actual killers were trying to recruit people, members of the Nietas organization, to commit that crime, they asked one member… Let me ask you, what does the record show as to why your client was told of the order? He was told because as a chapter leader, he was supposed to be informed. Well, doesn't that… Yes, but that doesn't mean they had any authority upon that order because every witness that was brought by the government, every cooperating witness, clearly established that my client did not have the authority to revoke or to stop the order given by the maximum leader. But he could have said no. Well… No may not have done anything, but he could have said no, this is not according to the rules, or I know it would have been disadvantageous, but he also could have told prison authorities. Yes, Your Honor, but if you look at his act, when that event was about to occur, his act demonstrated that he wasn't in agreement with that order. What I was about to… I guess the question is, since he was informed in his capacity as chapter leader, are there evidence you're not disputing suffices to show at least that, that he was informed of that? It was informed. Then why isn't it just a jury question as to what to draw as to the significance of what he did with that information? In other words, your contention is, with respect to that information, he's just like a passive bystander, and his conduct in that regard doesn't show that he took any predicate act through which tied him to the enterprise. But why isn't that just a question for the jury as to whether it is? What's your argument that there's nothing from which the jury could determine that with respect to that, he was doing the predicate, involved in the predicate act in a way that triggers the RICO effect? Because of his actions, Your Honor. He tried to save the victim's life. He was the one who advised the correctional authorities that there was an emergency with an inmate. He was the one who picked him up, took him to the infirmary so that victim could receive medical attention. That was after the fact. Yes, it was as soon as he found out that the act was committed. Wasn't he present at the time of the act being committed? He wasn't present. He wasn't present. He was in another area in a basketball court. And as soon as he found out, he moved. And we brought, in this case, Your Honor, we brought a witness, the guard that was on duty in the area where the murder occurred. And he confirmed the fact that he was informed by my client and that my client tried to save that other person's life. And prior to that, the members who actually committed the murder tried to recruit another member called Bourdon. And that member went to my clients to consult if that order was supposed to be followed. And when he came back from consulting with my client. Your time is almost over. I finished with this. When he came back, he informed the other members that he was not going to participate in that murder, which an inference could be drawn that my client was the one who told him not to participate in that event. So I submit to this court that the actions that my client took prior, during, and afterwards of the event clearly demonstrated that he was not in agreement with that order. He didn't want to participate with that order. He did everything that was possible to avoid it. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would Attorney Maldonado-Rodriguez please introduce herself on the record to begin. Good morning. Laura Maldonado-Rodriguez on behalf of Jose Folch-Colón. Mr. Folch-Colón was charged in the RICO conspiracy, in the drug conspiracy, and in one of the Viper counts, which is count four. This morning, I would like to talk about the jury instruction error that was brought up in the brief. The jury instructions that were provided to the jury as to the predicate counts or predicate state law charges under the Vicar Count were objected to during the trial. We requested the court to inform us where these instructions were coming from because the instructions did not match the Puerto Rico penal code offenses that were charged, that were used as predicate in the Vicar Count. The difference between the statutes, didn't it increase the burden on the government? It added a malice element, right? It added a malice element, but it also added a motive element that is not included in the Puerto Rico penal code for the two murder charges. But it increased the government's burden, right? The difference in the instructions was to the benefit of the defendants. No, it was not, because although it did add a malice element, it also added a motive element that is not present in the Puerto Rico penal code. By adding that motive element, we don't know where it came from. The court, in refusing to add the purpose or motive elements of the Vicar to the verdict form that was submitted to the jury, did not allow us to know what element of motive the jury used to make a decision regarding the Vicar Count. So you're objecting to the instruction or you're objecting to the difference between the instruction and the verdict form? Both. The sections of the argument in the brief divide the objections. As to the second one, just are you saying that there was some other motive under Puerto Rico law that would have been more favorable to the defendant that was not identified because of the motive that was identified? No, I am saying, and it is included in the brief, that the murder statute in Puerto Rico requires no motive. Motive under the Puerto Rico law is applied to other sections of the penal code. So what I'm having trouble following then is how does the Vicar verdict form hurt you? Because when the court read the motive element, which we don't know where it is coming from, it gave the jurors instructions regarding how to determine the motive for the murder, which is the predicate element. Wasn't there a separate instruction about what you had to find for Vicar? So was the idea that it confused the jury? Is that the point? Yes. It totally, not only did it confuse the jury, it does not allow us to know what was the basis of the verdict. Well, why wouldn't we think that the basis of the verdict form for the Vicar is the Vicar instruction? Fine, it is the Vicar instruction, but when you have within the instruction two purpose or motive instructions, one of them not necessary because it is not proper under the Puerto Rico penal code, and we do not have in the verdict form the specifics of the motive that has to do with the Vicar count, how do we know which one of the two was used? How would you know in any case in which there was a motive required under the state offense and you had a Vicar instruction? You would assume that the Vicar verdict form says you have to find the Vicar based on the Vicar instruction. Was there some reason not to conclude that here? Yes, Your Honor, because a motive instruction that is not proper under the Puerto Rico penal code was used, and therefore there is really no way to distinguish one from the other, and frankly But I still don't understand how that prejudices your client because murder can be committed under the code without a motive, and why doesn't that enhance the government's burden? The issue is not whether the government's burden is or is not enhanced, I think. The issue is whether the jury made a decision based on what the charges in the indictment are or whether it was based on something else that is an element of an offense that we don't know which offense it is. But with respect to the finding of whether the Puerto Rico murder offense occurred, the addition of a motive element doesn't hurt you because they couldn't find the offense without finding all the things absent the motive also. So the point of confusion I thought you were making is that somehow the addition of that motive element creates confusion with respect to the Vicar verdict form, but I'm not seeing how because nothing in the Vicar verdict form says ignore the Vicar instruction. Because if the motive used, okay, let's go to the verdict form and let's go to the question. The question that was asked in the Vicar verdict form was whether Orch participated in the murder of Alexis Enloco. If that is not the right question, the right question is whether he participated in the murder to promote and to assist or to gain entry or to gain power within the organization. That is the motive under the Vicar. But if what they used was the motive element that was introduced into the instruction that we don't know where it is coming from, maybe it is a motive under another statute, under another state. Okay, thank you. Thank you, Counsel. At this time, Attorney Ramos Pagan, if you could please introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court. I'm Counsel David Ramos on behalf of Mr. Jose Ramon Andino Morales, defendant in this case, case 19-2253. As to Mr. Andino Morales, this case is not a matter whether he was a member of the La Asociación de los Nietas. More so, it is whether he knowingly joined the conspiracy agreeing to participate in, number one, a conduct of affairs of the enterprise, and number two, that he did so through a pattern of racketeering activity by agreeing to commit two or more predicate offenses. Which is, in this case, was murder for hire, which in the very form was defined as a violent crime in aid of legal activity and also conspiracy to distribute controlled substances. Mr. Andino was indicted on three counts, the RICO conspiracy count on the 1961B, murder for hire, and the drug conspiracy. After the jury reached the verdict, he was found not guilty as to the murder for hire, not guilty as to the drug conspiracy, but he was found guilty as to the RICO conspiracy violation. Now, in deciding whether Mr. Andino was guilty as to any of these counts, they were given specific instructions of which we included in our appendix in pages 40 through 42. And at the time where the jury came to reach a decision and fill out the verdict form, which we included in the appendix in pages seven and eight, they were asked whether, as to count one, whether he was guilty or not. He was found guilty of the racketeering, was found guilty. Count two, he was found not guilty. Then they were asked to make special findings and were asked only the following. Only make the following findings if you have found the defendant, Jose Andino Morales, guilty as to count one and or count two, otherwise proceed to count three. And then the jury unanimously found the following. As to how much heroin was involved, they decided that none. As to cocaine, how much was involved? None. How much marijuana was found? None. Now, as to count three, they were asked, excuse me, that the commission, under the commission of a violent crime in aid of a recall activity known as V-card, white card, we, the jury, unanimously find that the defendant, Jose Andino Morales, as part, as part of the racketeering conspiracy committed or knowingly participated in committing the murder of Mario Montanez Gomez on or about August 27, 2004. And in here, again, the jury found and put an X next to the no, finding him not guilty as to that crime. Now, there were elements of criteria to decide that there were no predicate crimes under this, under this indictment, and that under the recall violation, although they found him guilty. Shouldn't we just be looking at this verdict as if the jury made a determination that he may not have been personally involved in the predicate act, but he was involved in the conspiracy and that his, he was in support of the overall goals of this, of this conspiracy and the, and its furtherance thereof? Yes, Your Honor. As to that, as to that issue, it can be inferred that he was found guilty under the recall right just because he was a member of the La Asociación Nieta. However, a member in agreement with the overall goals and in agreement to be in furtherance of the goals of the conspiracy. Yes, Your Honor. But, but still, during the course of the jury trial, which lasted around 13 days, it was not established any, any evidence presenting Mr. Andino engaged in a pattern of racketeering act. The only, the only government witness, I think, I believe there were two of them, that mentioned that he was involved in the murder. Nevertheless, when asked, none of the two witnesses were present during that murder. Well, I, I just, I guess I'm just trying to follow up on her question, which is that he doesn't have to participate in any of the RICO acts to be found guilty of participating in a RICO conspiracy. I, I agree with you, Your Honor. But still, even though he did not participate, no evidence was, was shown or displayed that he was, that he agreed to that, to that act or that pattern of racketeering act or that specific activity. But didn't he, didn't he pay to sell his personal supply? And didn't he pay for the, for the cell phone incentive? Excuse me, I didn't hear the question. Didn't he pay to sell his personal supply within the prison? And didn't he pay for the, pay the cell phone incentive? I believe that he, he did pay for the use of a cell phone, but not that he, that he engaged in any selling of controlled substances in order to pay for that cell phone use. Is my time over? Okay, thank you.  Thank you, Counsel. At this time, would Attorney DeSosa-Martinez please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court. AUSA Francisco DeSosa-Martinez for the Government. Your Honors, this Court in the United States v. Miriam Machuca has already looked over this evidence and determined that it was legally sufficient to establish that La Asociación Nieta was a RICO enterprise. The question before this panel is whether the evidence as to these particular defendants was sufficient to show that they knowingly joined that RICO enterprise and agreed that two or more predicate acts would be committed. And the answer to that, Your Honors, is yes. The government's cooperating witnesses identified each of these defendants not only as just members of La Asociación Nieta, but they gave a detailed account about their specific roles within that enterprise and their participation in the enterprise's unlawful endeavors. Was there evidence as to any of them independent of evidence of them having committed the acts? Because one thing that's just confusing me is they seem to have acquitted of committing the acts, and yet you're going forward on the conspiracy charge. Yes, Your Honor. And so I'm trying to figure out where – is there some evidence of the – I mean, that's not necessarily determinative, but is there some evidence of the conspiracy independent of evidence of them actually participating in the act? By joining the enterprise, Your Honor, there is a – that they did it through – that they joined the enterprise through the predicate acts with the agreement. That just shows they were a member of Nieta. We don't know whether – what all that means. Unless you're saying any member of Nieta is itself guilty of the conspiracy of these particular predicate acts. I didn't think you were making that argument. No, Your Honor. The government's evidence in this case was that they personally participated in these predicate acts. However, the fact that there are inconsistent verdicts is not a ground for overturning the refo conspiracy. But just so I'm clear, there's no evidence that the government's relying on of the agreement for the conspiracy part independent of the evidence that was put forward to show that they committed the predicate acts on which they were acquitted. Is that right? They are intertwined in this case, Your Honor, yes. On the jury instructions, I understand your argument to be there was no prejudice in the instruction that was given that it substantially covered the required elements. But do you agree or disagree that the district court gave the wrong instruction? No, Your Honors. As the defendant would have it, the district court would have simply just given a rote recitation of the statutory elements as they are present in the criminal code. However, the purpose of jury instructions is to illuminate these group of jurors, lay people, and help them understand what these legal concepts mean. And that is what the district court did in this case. It outlined the elements of the Puerto Rico murder and then went into explaining to them, breaking it down to them, for them, Your Honors, to explain to them what was necessary to find that each of those elements was satisfied in this case, that the government met its burden as to each of those elements. Was a motive instruction necessary? Should it have been given? Motive instruction was not necessary because it's not an element. However, if we look at the transcript to that instruction, it wasn't as defendants said that it added an element. The district court prefaced that instruction by saying, and I quote, although the government need not establish the motive for the murder of the victim, you may consider motive as evidence of premeditation. So what the district court was doing there was saying, this is not an element of the offense, but it is evidence you can consider for determining whether this actual element, the premeditation element, was satisfied. And so that's basically what occurred with the jury instructions, Your Honor. Choice of language is largely a matter of the district court's discretion, and as long as it's wholly consistent with the state law predicate, it is a satisfactory jury instruction. By the way, was the instruction as you just read it objected to, below? No, Your Honor. On Mr. Miranda's martinez, could you just address this argument as to what shows beyond his membership that he was involved through the predicate in the conspiracy charge through the predicate with respect to the predicate act of the murder for hire? Yes, Your Honor. Miranda, as chapter leader of that institution, seconded the order. What does that mean, second? Is that the same as being informed of it? Being informed and giving the final go-ahead. And what is that second part? That's what I'm interested in. Did he relay that information to another person? Is there evidence that he did? When you say he gave the go-ahead, what does that mean? What's the evidence of him doing something? That he informed Helena and the others involved that now is the time to take this. And there's evidence of him having done that? Yes, Your Honor. I can get the citation for you in the Rule 28J letter. And moreover, as to the… Just to pin it down, so you're saying that the evidence reflects that he directly communicated not only that the order had been given, but the time was now? Yes, Your Honor. And moreover, as to Miranda's argument that post-murder there's evidence that he wasn't involved because he actually was trying to help this person by taking them to the infirmary or to admissions, we actually have testimony from one of the people that participated in the murder, Helena. He testified that he took them to the admissions not to help him or because he wasn't remorseful, but, and I quote, so that eyes don't fall upon him or to fool over the administration as though he had nothing to do with it. So that's consistent with the government's theory of the case was that he participated, he gave the final order, and he tried to cover it up and make it look like an accidental order. But just to be clear, the government just says there is evidence in the record of some testimony or some such thing like that that he, it wasn't just informed of it, but he passed it on to others and told them the time is now? Yes, Your Honor. Okay. Word for word? No, Your Honor, but it is wholly consistent with the case. And so just walk me through how it is, and I take it there was a VIKR, a separate VIKR instruction? Yes, Your Honor. And no one's objected to that instruction? No, Your Honor. Okay. So just walk me through the VIKR verdict form language and why you think it accords with what was required. It didn't create confusion. Your Honor, I can't remember the precise language of the form at the moment. I don't have it in front of me. But I can consult with the trial attorneys as to why their choice of the language. And if the panel has no further questions. On Mr. Adino Morales' sentence, I think that the government concedes that the district judge didn't give his reasons for the sentencing. And I know you claim it's a plain error review. But when you're relying on conduct not proven beyond a reasonable doubt at trial, which it looks to me like he did, is it plain error not to state the reasons under those circumstances? No, Your Honor, because as this Court has previously stated, there is a great deal of deference given to district courts, particularly in cases like this where they sit and preside over a lengthy trial and hear the evidence. And although the jury may not have found that the evidence was beyond a reasonable doubt that he did commit it, it did satisfy in the district court's view. How do we know that? From the fact that it agreed with the application of the murder cross-reference after hearing the party's arguments as to why it wasn't. And so the evidence in the district court's view was more than satisfactory to show that he had participated by a preponderance of the evidence, which is not beyond a reasonable doubt, but rather more likely than not. Did the PSR recommend the cross-reference? I believe so, Your Honor, yes. And was there an objection? No, no PSR objection, Your Honor. I'll have no further questions. Thank you, Counsel. We have a rebuttal. Did you request a rebuttal? Yes, we did. On behalf of Mr. Miranda Marin, his rebuttal would be that there is no specific evidence that he did receive an order and gave the order and relayed the order to murder Mr. Elias Ruiz. On behalf of Mr. Folch Colon, to the question as to whether there was an objection to the instruction, the— Just on that first point, you're just saying the government's just wrong? There is nothing in the record showing that it was relayed? That it was relayed, that the order to kill was relayed by Mr. Miranda Marin. That would be his rebuttal. As to Mr. Folch Colon— Wait a minute, just a minute now. Not that he himself ordered the killing. Did he transmit that the head leader had ordered that it be done? Mr. Miranda Marin sustains that there is no evidence on the record as to that. That would be his rebuttal. As to Mr. Folch Colon, regarding the question whether there was an objection to the instruction, the objection was if the government relied on the 2012 Puerto Rico Penal Code, then the instructions must tailor themselves to those definitions. I don't know, because there are no citations in the instructions that the court gave us, where these instructions, these definitions are coming from. But from checking last night the Puerto Rico Penal Code, they do not come from the Puerto Rico Penal Code, and I do not believe that they can be used, because that would amount to a constructive amendment of the indictment by the court's instructions that it was an objection made at day 10 of the jury trial, page 9. But what's wrong with the instruction, if counsel read it correctly, that there's no requirement that the jury find motive, but if the jury finds motive, that it might be evidence of premeditation. What's wrong with that? Because the premeditation instruction under the Puerto Rico Penal Code would be that there was deliberation occurring prior to the resolve to perpetrate the act after having considered it for some time. And I do not believe that we have to show prejudice, because it was a constructive amendment of the indictment by giving instructions that were not properly tailored to the Puerto Rico Penal Code. Last night, I sent in a supplemental citation, Simmons, United States v. Simmons from the Fourth Circuit. In that case, there was a biker charge, where there was one of the Virginia statutes cited in the indictment, and there was another that was not. But court instructed us to vote properly under the Virginia Penal Code. Simmons found that it was a constructive amendment that was not objected to. They found prejudice. In this case, there is constructive amendment. We did object. We do not have to show prejudice. You're saying that under the Penal Code, evidence of motive cannot go towards the issue of premeditation, that that's air as a matter of law? The issue here is that motive is not included in the Puerto Rico Penal Code as to murder. It is not. Why include it if it is not? Just listen to the question. The question is not, is motive an element? The question is, is motive evidence of the element of premeditation? And is that motive as defined by the Puerto Rico Penal Code is not included in the murder section? We got it. Thank you. Thank you. Thank you, counsel. That ends argument in this case. If the government could submit a 28-J letter on the part of the record you're relying on for the representation about where in the record you contend that the defendant had passed on the information, and if you want to file a response to that 28-J, you're entitled to do so. Thank you. Thank you, counsel. You're excused.